[No. 27356. Department Two. February 20, 1940.]

G. E. WATKINS, *Appellant,* v. THE CITY OF SEATTLE, *Respondent.*[1]

[1]Reported in 99 P. (2d) 427.

696

*Little, Burgunder & Smith,* for appellant.

*A. C. Van Soelen* and *Glen E. Wilson,* for respondent.

STEINERT, J.—Plaintiff, in his own behalf and as assignee of the claims of six fellow employees, brought suit against the city of Seattle (1) for the recovery of wages that would have been earned by them as auto truck drivers during certain periods of time when they were laid off from work which, in the meanwhile, was performed by men classified as laborers, and (2) for the recovery of the difference between the amounts which they should have received as the wages of truck drivers and the amounts which were actually paid them as the wages of laborers. The cause was tried to the court and resulted in a judgment of dismissal with prejudice. The plaintiff has appealed. For convenience, plaintiff and his assignors, C. F. Blodgett, Joseph E. Dumas,

L. G. Cooper, D. E. Wood, O. L. Albee, and Ben Christensen, will hereinafter at times be referred to as appellants, and the city of Seattle as respondent.

In June, 1932, appellants were, and for some time past had been, in the employ of respondent, in the department of streets and sewers, under a civil service rating of "auto truck drivers." On June 15, 1932, the superintendent of the department notified appellants, with the exception of Albee, that they would be laid off on July 1st for "lack of funds and lack of work." Albee, on account of his seniority, was not laid off until January 1, 1933.

Shortly after the receipt of the notice of layoff, appellants Watkins and Blodgett made oral protest to the civil service commission against such action. At the suggestion of the commission, the protest was reduced to writing in the form of a letter, signed by all the appellants except Albee, and filed July 15, 1932. The letter called attention to the fact that the trucks which appellants had formerly driven were still being operated, but by men classified as laborers. After several discussions with appellants, the commission, on October 28, 1932, ordered that a detailed investigation of the matter be made. After an investigation and report by its examiner, the commission notified the superintendent of streets and sewers that laborers were doing work which properly should be done by truck drivers.

The superintendent replied that the department did not have sufficient funds at its disposal to pay the men the wages to which they would be entitled as truck drivers. The established monthly compensation of the drivers was higher than that of laborers.

On November 16, 1932, the superintendent and the truck drivers who had been laid off appeared before the commission to discuss the matter further, and the

superintendent then suggested the possibility of returning the men to work by reducing them to the status of laborers pending their later employment as truck drivers. The suggestion was taken under advisement, and on the following day the commission approved the suggestion to the extent that the reduction of the men to the status of laborers was to continue until their trucks were again put in service.

On November 22, 1932, each of the appellants, with the exception of Christensen and Albee, signed a "request" for demotion to the grade of laborer "until such time as conditions will enable me to go back to my regular position." Albee signed a similar request a few days later. The requests for demotion were prepared by the superintendent and were signed in his office. It is not denied that, at that time, the superintendent told the men that the requests would have to be signed before November 28th, the effective date of an amendment to the civil service rules which would bar their demotion to a lower grade; that, if they did sign, they could go back to work as *laborers*, but otherwise they would not have jobs; and that, if they should take the case to court and get a decision favorable to them, he would discontinue the use of the trucks rather than reinstate the men as truck drivers. After the requests had been signed, the superintendent sent a communication to the commission, notifying it that the appellants, with the exception of Albee and Christensen, had been reduced to the grade of laborers, canceling their former separation from service effective July 1st, and asking that the men be considered as being on leave of absence from July 1st to November 23rd.

Albee continued to work as truck driver until January 1, 1933, and was then demoted to the grade of laborer. Being fully conversant with the circumstances under which the demotions of the other men

had been made in the preceding November, he registered no protest against his own reduction. Christensen refused to sign a "request" for demotion and therefore was not put back to work until August, 1936, under conditions hereinafter related. However, he continued to press his claim for reinstatement and appeared before the civil service commission at practically all of its meetings until he actually was reinstated. There is evidence to the effect that, in his appearances before the commission, he represented all the appellants.

After appellants, with the exception of Albee and Christensen, had been put back to work as laborers in November, 1932, they continued to do the work of truck drivers, just as they had done before, and it is not disputed that, at all times, from the layoff in July, 1932, until February 3, 1937, the department continued to operate the same, or a greater, number of trucks, but using laborers to drive the lighter machines. Albee, on his demotion to the grade of laborer in January, 1933, likewise continued to do the work of a truck driver, just as he had done before.

Subsequently, appellants, with the exception of Christensen, were, at various times, laid off from all work, but during all of such times respondent continued to operate the trucks, though manned by men who were regularly classified as laborers.

The layoffs and demotions here in question and the course of procedure adopted and thereafter followed by the department of streets and sewers were the result of a policy of economy inaugurated by the mayor who was then in office.

After the change in the city administration, appellants on June 13, 1934, jointly addressed a communication to the civil service commission, calling attention to the fact that trucks were being driven by men classified as laborers. Following an investigation of

the claim, the commission considered the matter and on July 31, 1934, made findings to the effect that the demotions of the truck drivers to the grade of laborers were in no sense voluntary, but were in fact reductions by the department itself on account of lack of funds. As a result of these findings, the commission ordered that it be shown on the reinstatement registers that the names of the employees affected were carried as if the requests for reduction were departmental requests.

On December 31, 1934, the matter of employment of laborers to do the work of truck drivers was again considered by the commission, and its secretary was instructed to notify the superintendent that the pay roll, in so far as it showed that laborers were doing the work of truck drivers, would not be checked for approval. The notification was duly sent. The superintendent then in office, successor to the one who had demoted the men, announced that the department did not have sufficient funds with which to comply with the order of the commission, and continued the practice instituted by his predecessor.

In July, 1935, the superintendent, in answer to the continued demands by the men for reinstatement, advised them that "you have got to go to court for results." Accordingly, on July 15, 1935, K. W. Jarrett, a demoted truck driver junior in rank to the appellants herein, commenced an action seeking his reinstatement to his former position. It appears that the appellants, being interested in the consequences of that proceeding, contributed to the expense of the suit.

Upon a trial of that action, the superior court entered judgment directing that Jarrett be reinstated to one of the positions of truck driver not filled by men of that classification, and the city was ordered to refrain from operating the remaining trucks, being those here in question, with employees of any other classification

than that of auto truck drivers. On appeal by the city, that judgment was affirmed by this court on June 30, 1936. *State ex rel. Jarrett v. Seattle,* 186 Wash. 541, 58 P. (2d) 1212.

While that appeal was pending, the city put on five new trucks, whereupon appellants demanded that men of their group be employed as truck drivers in the operation of the trucks. After considering the matter, the commission, through its secretary, on April 20, 1936, wrote to the city engineer, who had taken over the supervision of the street department, advising him that a considerable number of truck drivers in that department had arbitrarily been reduced to laborers; that the employment of laborers as truck drivers was in violation of the civil service law; and that an early effort should be made to adjust the situation. The city engineer did not comply with the request of the commission. However, after the decision in the *Jarrett* case, and by September 1936, the men were given a standing of non-civil service truck drivers.

The appellants not being entirely satisfied, and some dispute as to seniority rights having arisen, the matter was again taken up with the commission. After receiving an opinion from the corporation counsel, and in compliance therewith, the commission on February 3, 1937, directed:

" . . . that Civil Service Status be restored to all such employees affected, *dating from their purported lay-off* [July 1, 1932] from the positions of auto truck drivers, including those whose eligibility is considered to have expired." (Italics ours.)

Having been reinstated to their former positions, the appellants, through Watkins, began this action on February 3, 1937, to recover the loss of wages sustained by them as a result of their periods of unemployment and of their periods of employment at laborers' pay.

It is conceded by appellants that their right of recovery for the time prior to February 3, 1934, is barred by the three-year statute of limitations. They therefore seek to recover only for the period subsequent to that date.

Respondent contends that appellants are not entitled to recover at all (1) because, with the exception of Christensen, they lost their right of reinstatement as truck drivers by their demotion to the grade of laborers in 1932, regardless of whether their "requests" for demotion were voluntary or involuntary, and (2) because their right of recovery, if any, is barred under the doctrine of laches. It is further contended, as to Watkins and Blodgett, that their claims are now *res judicata* by virtue of a certain mandamus action brought by them against respondent and others in November, 1932, and the dismissal thereof with prejudice in June, 1934. As to Albee, it is also contended that his claim is barred because he failed, for more than a year and a half after January 1, 1933, to make any protest or demand for investigation.

The situation here, with respect to the right of appellants, at the time of their layoff on July 1, 1932, to continue as truck drivers and under that classification to operate the trucks, is controlled by the decision in the case of *State ex rel. Jarrett v. Seattle*, 186 Wash. 541, 58 P. (2d) 1212, wherein the basic facts are exactly the same as those involved here. In that case, we said:

"Inasmuch as the streets and sewers department operated thirty-six trucks at all times subsequent to the time that Jarrett was laid off and prior to the time of bringing this action, fourteen of these being operated by civil service employees classified as laborers, and the work that they did, as found by the trial court, being 'in all respects identical with the work performed by the incumbents of the 15 positions of auto truck driver' that were classified as such, it necessarily follows, under the rule stated, which is supported by the

authorities cited, that there were thirty-six positions of auto truck driver, and that Jarrett was entitled to one of them."

So, here, appellants were each entitled to the position of auto truck driver as long as the trucks were being operated by respondent. Consequently, their exclusion from such positions by respondent was wrongful. The matter of their reinstatement has been accomplished and is not now in dispute; that fact is material here only upon the question of their right to compensation during the periods of their separation from employment.

That a civil service employee is entitled to recover compensation for the period during which he was wrongfully separated from his position of employment, is no longer open to question in this state. *State ex rel. Allen v. Spokane,* 150 Wash. 542, 273 Pac. 748, 277 Pac. 999; *Fosnaugh v. Seattle,* 167 Wash. 519, 9 P. (2d) 1110; *Hill v. Tacoma,* 175 Wash. 98, 26 P. (2d) 1030; *Allard v. Tacoma,* 176 Wash. 441, 29 P. (2d) 698; *State ex rel. Jackson v. Seattle,* 177 Wash. 646, 32 P. (2d) 1065; *Haga v. Seattle,* 195 Wash. 226, 80 P. (2d) 821.

However, a seasonable and sufficient demand is a prerequisite to such right of compensation. *State ex rel. Abel v. Seattle,* 137 Wash. 142, 242 Pac. 9; *State ex rel. Ausburn v. Seattle,* 190 Wash. 222, 67 P. (2d) 913, 111 A. L. R. 418; *Haga v. Seattle,* 195 Wash. 226, 80 P. (2d) 821.

The demand, if seasonably made, need not be in writing, unless the city charter or some effective rule of the civil service commission requires it. *Fosnaugh v. Seattle,* 167 Wash. 519, 9 P. (2d) 1110. No such official requirement has been called to our attention in this case.

Oral protests against the layoff on July 1, 1932, were

made by appellants, excepting Albee, prior to, and also immediately after, its effective date. In addition, appellants, with the exception of Albee, complied with the request of the commission and filed their written protest on July 15, 1932. The prerequisite to recovery was therefore established, and appellants, with the noted exception, would be entitled to recover upon that basis unless for some other well-founded legal reason they are barred.

Respondent contends, as against all the appellants with the exception of Christensen, that their requests on or about November 22, 1932, for demotion to the classification of laborer constituted resignations from the positions of truck drivers and, consequently, waivers of any alleged irregularity in the layoffs on July 1, 1932.

At the outset, it will be recalled that such requests expressly stated that the demotion was to be effective only "until such time as conditions will enable me to go back to my regular position." Aside from the added effect of the circumstances under which the demotions were made, there may be some question as to whether, in any event, under the civil service law, a conditional demotion would be effective for any purpose. That question, however, we need not now decide. Regardless of what construction is to be placed upon the requests and the consequent demotions, the effect that they otherwise might have had was annulled by the order entered by the civil service commission on February 3, 1937, which, in conformity with the position that the commission had always taken, directed that the employees be reinstated to their former status and rights "dating from their purported layoff [July 1, 1932]."

No contention is made that the order was for any reason improper or invalid. The rules and regulations, by which the propriety of the order might be judged,

are not before us. Its purpose manifestly was to rectify what the commission considered to have been a wrong, or, at least, to define the action of the superintendent as an attempt to reduce the force in a manner which, under the circumstances, was unlawful. So far as the effect of the order is concerned, that is clear upon its face. It restored the men to the status of truck drivers as of July 1, 1932, and thus dissolves all idea of resignation.

■ Respondent next contends that the demotions constituted removals from the positions of truck drivers and that appellants, not having made demands for investigation of such removals within ten days thereafter, as required by Art. XVI, § 12, of the charter of Seattle, are now barred from having that question reviewed. Conceding that the charter provision applies to removals, we are of the opinion that, under the facts of this case, the demotions were not removals within the meaning of the charter provision. What we have said above with respect to respondent's contention as to resignations is equally applicable here and likewise dispositive of the contention that the demotions constituted removals which may not now be reviewed because of the delay in demanding an investigation.

Under the second division of respondent's argument, as set forth in its brief, it makes a number of contentions in which it claims that appellants were guilty of laches barring recovery. We will assume that the equitable defense of laches may be interposed in an action of this nature.

■ We have already detailed the number of insistent protests made by the appellants both before and after the change in city administration. We have likewise referred to the favorable attitude manifested by the civil service commission toward the appellants,

and its repeated recommendations and warnings to the superintendent of the department throughout the period of this controversy. We need not repeat those details here. It is enough to say now that, as a basis for a claim of reinstatement, the protests made by appellants were seasonable and sufficient.

Respondent, however, contends that appellants were, nevertheless, guilty of laches because they failed to make a separate claim for back pay, in addition to their demand for reinstatement.

A seasonable and sufficient demand for reinstatement, which we hold was made in this case, automatically carries with it the right to compensation accruing to the position during the period of wrongful separation. *Haga v. Seattle,* 195 Wash. 226, 80 P. (2d) 821. No separate or additional demand is necessary.

 Furthermore, under the factual situation presented by this case, laches in not making an earlier demand for wages did not operate as an estoppel against claims for amounts accruing within the time fixed by the statute of limitations. In the recent case of *State ex rel. Hartzell v. Seattle,* 199 Wash. 455, 92 P. (2d) 199, a number of city employees, at the end of a period of approximately seven years during which they had received regular pay for work performed on Sundays and holidays, brought suit to recover additional compensation for work done on those days, on the ground that the salary ordinance provided for extra compensation for Sunday and holiday work. The city contended that the workmen were not entitled to receive additional compensation for the reasons that they had accepted the amounts paid by the city; that they were not diligent in protecting their asserted rights for a period of seven years; and that they had lulled the city and its officers into the belief that they would not

be subject to suit. In answer to that contention, this court said:

"Respondents were not estopped to claim the amounts due them dating back a period of three years from the commencement of this action, for the reason that this action is not barred by the statute of limitations; and laches, in not making a demand at an earlier date, does not operate as an estoppel, since it is against the public policy of this state for employees of a municipal corporation to waive any part of their salaries as lawfully fixed."

█ Respondent further contends that appellants are estopped by reason of having accepted and cashed the warrants for the work performed by them.

The contention amounts to a plea of accord and satisfaction. As such, however, it is without consideration and, therefore, ineffective. *Rhodes v. Tacoma,* 97 Wash. 341, 166 Pac. 647.

█ Moreover, to sustain that contention would be to nullify, to a large extent, the uniform holdings of this court that it is against public policy to permit an employee of a municipal corporation to agree to waive any part of his salary or wages fixed by law. *Rhodes v. Tacoma,* 97 Wash. 341, 166 Pac. 647; *State ex rel. Knez v. Seattle,* 176 Wash. 283, 28 P. (2d) 1020, 33 P. (2d) 905; *State ex rel. Pike v. Bellingham,* 183 Wash. 439, 48 P. (2d) 602; *State ex rel. Ausburn v. Seattle,* 190 Wash. 222, 67 P. (2d) 913, 111 A. L. R. 418; *State ex rel. Ross v. King County,* 191 Wash. 340, 71 P. (2d) 370; *Chatfield v. Seattle,* 198 Wash. 179, 88 P. (2d) 582, 121 A. L. R. 1279; *State ex rel. Hartzell v. Seattle,* 199 Wash. 455, 92 P. (2d) 199.

█ The additional contention made by respondent against Watkins and Blodgett is that the action brought by them against the city in 1932 and dismissed with

prejudice in 1934 is *res judicata* of their rights to recover in this action.

That question, however, is not properly before us. The judgment in that action was not pleaded in the instant action, and the record in that case was admitted as evidence in the case at bar over appellant's objection. The answer cannot, therefore, be considered as amended to show a plea of *res judicata*. Since that defense was not properly pleaded and proved, it cannot now be considered. *Wood v. Earls,* 39 Wash. 21, 80 Pac. 837; *Russell v. Mutual Lumber Co.,* 134 Wash. 508, 236 Pac. 96; *Large v. Shively,* 186 Wash. 490, 58 P. (2d) 808.

■ There is another reason why this contention cannot be sustained. To make a judgment *res judicata* in a subsequent action, there must be a concurrence of identity in four respects: (1) of subject matter; (2) of cause of action; (3) of persons and parties; and (4) in the quality of persons for or against whom the claim is made. *Northern Pac. R. Co. v. Snohomish County,* 101 Wash. 686, 172 Pac. 878.

The former action was brought by Watkins and Blodgett against the city and two truck drivers employed in the streets and sewers department, to establish preferential rights against the two truck drivers. The present action was brought on behalf of seven employees to recover wages for periods of enforced unemployment and for loss of wages sustained by reason of unlawful reduction in grade. A concurrence of identity in the first, second and third respects just enumerated is lacking. Hence the former judgment is not *res judicata* of the claims now in suit.

■ The additional contention made by respondent against Albee is that he made no protest until June 13, 1934.

Albee was not laid off with the other men on July 1, 1932, and consequently had no occasion to make a demand for investigation at that time. Because of his seniority, he continued on as a truck driver until January 1, 1933. However, in November, 1932, he had signed a request for demotion, as the others had done. In the following January, he was demoted to the rank of laborer, and from that time on underwent the same experience with reference to his work in the department as that which befell the others, but he made no protest or demand for investigation until June 13, 1934, which was shortly after a change in the city administration had taken place. There was, thus, a lapse of almost eighteen months.

Since he failed to make any protest or demand at the time that his demotion became effective in January, 1933, we do not think that his demand for reinstatement on June 13, 1934, was seasonable for the purpose of basing a claim for compensation dating as far back as his demotion.

However, his situation is the same as that of the employee in the case of *State ex rel. Jarrett v. Seattle,* 186 Wash. 541, 58 P. (2d) 1212. Upon his protest and demand for investigation on June 13, 1934, Albee became entitled to a position of truck driver, for the same reason that Jarrett was held to be entitled to a similar position. His separation from the position from that time forward was wrongful, and under the holdings in *State ex rel. Buchanan v. Seattle,* 171 Wash. 113, 18 P. (2d) 3, and *Haga v. Seattle,* 195 Wash. 226, 80 P. (2d) 821, he was entitled to recover the compensation accruing to the position during the period of his wrongful separation.

Appellant is, therefore, entitled to recover on the Albee claim for the period beginning June 13, 1934.

He is also entitled to recover on his other causes of action for the period beginning February 4, 1934.

The judgment is reversed, and the case is remanded with instruction to the superior court to enter judgment in accordance with the views herein expressed.

BLAKE, C. J., BEALS, GERAGHTY, and JEFFERS, JJ., concur.

